CUDD v. WILLIAMS.

1. REFERENCE—ACQUIESCENCE.—In an action for the specific performance of an agreement for the payment of money, the answer alleged fraud in the transaction and demanded an accounting, and the Circuit Judge, over defendant's objection, referred the case to the master to hear and determine the issues of law and of fact, and make his report thereon, with leave to all parties to except. *Held*, that the defendants having failed to except to this order until after final judgment, having attended the references and participated in the hearings and trials, this court will not now declare error in the original order of reference.

2. IBID.—A CIRCUIT JUDGE cannot set aside an order of reference made by his predecessor.

3. VENDOR AND VENDEE—PRIOR FRAUDS.—Where plaintiffs purchased the stock of goods of defendant's husband, and then gave to him a half interest therein for his services, and afterwards sold their remaining half interest to defendant for value, defendant cannot be heard to resist payment for her purchase by showing fraud in the purchase by plaintiffs from her husband.

4. MARRIED WOMEN—PURCHASE.—Parties owning a half interest in a stock of merchandise may lawfully sell such half interest to the wife of the owner

of the other half interest; and she will be liable for the price of her purchase.

Before KERSHAW and FRASER, JJ., July, 1891, and January, 1892.

Action by J. N. Cudd and O. S. Roberts, partners as Cudd & Roberts, against S. B. Williams and T. A. Williams, her agent.

*Messrs. Bomar & Simpson* and *J. K. Jennings,* for appellant.

*Mr. Stanyarne Wilson,* contra.

September 15, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. S. B. Williams is the wife of her codefendant, T. A. Williams, a merchant of Spartanburg. The action was brought to require the defendants to perform their part of an alleged parol agreement for a lot of goods sold and delivered by the plaintiffs to the defendant, Mrs. S. B. Williams, for the agreed price of $1,880.20. The testimony is voluminous (all in the record), and we think the careful statement made by the master, H. B. Carlisle, Esq., upon reference to him, will sufficiently explain the facts. He states: ''That in March, 1890, the defendant, T. A. Williams, becoming embarrassed and being threatened with suit, sold out his entire stock of goods in bulk to the plaintiffs, Cudd & Roberts. The consideration for the sale was $1,000 in money and $3,000 in notes, to be paid from the sale of the stock of goods. The $4,000 amounted to fifty per cent. of the cost value of the goods, and seems to have been considered by the creditors at the time as a fair price. In addition to the consideration above mentioned, Williams was to have for his services one-half of the profits of the concern, and was to give his time to the business. The business ran on under these arrangements, Cudd & Roberts buying new goods and placing them in the stock to enable them to sell off the old articles more profitably, until the first of January, 1891, when an accounting was held, stock taken, and it was found that they had on hand $4,941.86. Accord-

ing to the original trade, one-half of this belonged to Mr. T. A. Williams, and under contract made at the time with T. A. Williams, as agent for Mrs. S. B. Williams, Cudd & Roberts sold her their half of the goods and credits on hand for seventy-five per cent. of the inventory, amounting to $1,853.50. Besides this, there were some goods overlooked amounting to $75. This action was brought to enforce this agreement."

The defendants answered, claiming, among other things, (1) that the original transaction between T. A. Williams and Cudd & Roberts was fraudulent, and that a court of equity would not interfere in the matter, because they do not come into court with clean hands; (2) that Mrs. Williams is a married woman, and on that ground she is relieved from any liability; and (3) that if it should be determined that plaintiffs had any such interest, and that any sum whatever was due to them from the defendants, S. B. Williams and T. A. Williams, as her agent, then these defendants say that there should be a full accounting between them and the said plaintiffs; and on such accounting, defendants say that the plaintiffs will be due them a considerable sum of money. Further answering, these defendants allege, by way of counter-claim, in case an accounting is refused in this action, that plaintiffs are justly indebted in the sum of $500 to the defendant, S. B. Williams, &c. Wherefore, the defendants demand that the complaint be dismissed; or, failing in that, that the accounting be had between plaintiffs and defendants, and that plaintiffs be required to pay such sum as may be found due on such accounting, &c.

It seems that the case first came up before his honor, Judge Kershaw, who, on August 10, 1891, granted an order (the defendants' attorneys objecting) that it be "referred to the master to take the testimony herein, to hear and determine the issues of law and of fact, and make his report to this court, and that all parties be allowed to except thereto." There was no appeal taken at that time from the order of reference; but under it the master held references, the attorneys of the defendants being present, offering testimony and arguing the cause. The master made his report, recommending that the defendants be required to perform their contract, by paying

the amount claimed in the complaint. No exception was made to this report upon the ground that the order referring the case was illegal and void.

The exceptions to this report were heard by his honor, Judge Fraser, who held as follows: "One of the questions raised before me at the hearing was as to the right to refer this case 'to the master to hear and determine the issues of law and fact,' though not among the exceptions to the master's report. Whether this is a law case, as I am inclined to think it is, or a case on the equity side of the court, I have no right now to consider the validity of the order of reference made August 10, 1891. I cannot review the order made by my predecessor." He sustained the exceptions as to the liability of the husband, T. A. Williams, and overruled them as to Mrs. S. B. Williams, and thereupon ordered and adjudged that the plaintiffs have leave to enter up judgment against the defendant, Mrs. S. B. Williams, for the sum of $1,880.20, and that the complaint be dismissed as to the defendant, T. A. Williams.

From this decree the defendant, Mrs. Williams, gave notice of appeal from the order of Judge Kershaw referring the case to the master, and also from the decree of Judge Fraser on the merits, and will ask a reversal or modification of the decree, on the following grounds: "I. That his honor, Judge Kershaw, erred in ordering said cause referred to the master, over the objections of the defendant. II. That his honor, Judge Fraser, erred in holding that he had no right to consider the validity of the order of reference made by Judge Kershaw, and in not ordering an issue to a jury, as asked for by defendant. III. In holding that there was no sufficient evidence of fraud in the transactions between plaintiffs and T. A. Williams. IV. In holding that, even if there was fraud in such transactions, only the creditors of T. A. Williams could take advantage of it, and that the defendant could not set it up as a defence in this case. V. In not holding that there was no consideration for the alleged contract between the plaintiffs and defendant, and that she was not bound thereby. VI. In not holding that, being a married woman, defendant had no right or capacity to make any such contract, and that she is not bound thereby," &c.

Exceptions 1 and 2 make the first question, whether the plaintiffs had the right to have the case referred to the master over the objection of defendants. Was it a law case or a suit in chancery? At the time the question was made before Judge Kershaw, the only guide in the matter was the pleadings; and it seems to us that the answer of the defendants, in setting up fraud on the part of the plaintiffs in the transaction out of which their claim arose, and in claiming an account in reference thereto, presented features of equitable cognizance which would have authorized the old Court of Equity to take jurisdiction of the case. We cannot say that his honor, Judge Kershaw, should have regarded this as "an action either for the recovery of money only, or of specific real or personal property." See *Pelzer, Rodgers & Co.* v. *Hughes*, 27 S. C., 418. Besides, while the defendants did object to the order of reference when made, we fail to find in the record that they gave notice of appeal therefrom, which they might have done. But, on the contrary, they seem to have acquiesced in the order by attending references under it, examining witnesses, and arguing the case at every stage down to the final decision below, when for the first time they gave notice of appeal, not only from the judgment of his honor, Judge Fraser, on the merits, but, also, from Judge Kershaw's previous order of reference. Of course, it is quite clear that Judge Fraser did not err in refusing to set aside Judge Kershaw's order referring the case, for the double reason, that no such exception was before him, and, also, that he did not have the power to set aside the order of his predecessor. No motion was made before him for "issues from chancery," and if there had been, it was discretionary with him whether he would grant them. *Rollin* v. *Whipper*, 17 S. C., 32.

Exceptions 3 and 4 make the point, that Mrs. Williams cannot be made liable upon her contract to pay for the goods, for the reason that the goods sold to her by the plaintiffs arose out of a fraudulent transaction with her husband. We agree with the Circuit Judge that there is no sufficient evidence of fraud in the prior transactions between the plaintiffs and the defendant, T. A. Williams. Mrs. Williams

received the goods as her own property, and why should she not be made to pay for them according to contract? But if there was fraud in the prior transactions of her husband with the plaintiffs, Mrs. Williams had no connection with it. The fraud alleged was only against the creditors of Williams, and, as we understand it, no such creditor is here complaining. If the plaintiffs acquired the goods improperly, we cannot see how that should furnish Mrs. Williams an excuse for the violation of her agreement to pay for them.

Exceptions 5 and 6 complain that Judge Fraser erred "in not holding that, being a married woman, the defendant had no right or capacity to make any such contract, and that she is not bound thereby." We agree with the Circuit Judge that there is nothing in our cases which holds that a married woman may not purchase the share of one or more joint tenants, or tenants in common, even if the other interests are held by the husband. The husband and wife may make partition if they so desire, but the formation of a partnership instead thereof is a matter with which the seller has nothing to do and cannot control.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.