## PRATT v. TIMMERMAN.

1. JURY.—When a complaint seeks to recover a money judgment, and foreclosure of a lien on personal property, and defendant, by way of affirmative defense, alleges fraud, misrepresentation, failure of consideration and non-compliance with terms of the contract, and prays that contract be rescinded, he cannot demand a jury trial as of right.

2. REFERENCE—CHAMBERS.—A CIRCUIT JUDGE has power at chambers to make order of reference to take testimony.

3. IBID.—CIRCUIT JUDGE.—When a new trial is ordered in an equity case, both parties may rely on testimony already taken, and upon motion, Circuit Judge may grant reference to take further testimony, if, in his opinion, the ends of justice will be furthered thereby, and this he may determine by inspection of the pleadings.

4. IBID.—IBID.—An order referring a case to take and report the testimony is administrative, and a succeeding Circuit Judge may alter or modify it.

5. FINDINGS OF FACT by trial Judge concurred in.

Before GAGE, J., Aiken, January, 1903. Affirmed.

Action by Julia A. Pratt *et al.,* doing business as Daniel Pratt Gin Co., against J. G. and R. H. Timmerman. The decree on Circuit is as follows:

"This cause was remanded to this Court for a new trial, 62 S. C., 445. Thereafter Judge Aldrich, at chambers, made an order directing the master to take any further testimony offered, and to report the same to this Court. That report is in, but the master was not directed to report his conclusions on the issues of law and of fact raised by the pleadings, always a matter of regret to a trial Judge. The testimony taken before the appeal covered 120 printed pages, and that taken since the appeal covers 78 typewritten pages. It embraces a wide range of topics. The Supreme Court decided one issue only, to wit: The plaintiff was bound, under the terms of its contract, to supply to the defendants a pulley on the line shaft, which would turn the shaft 250 times per minute. The Circuit Judge had held it was the duty of the defendants to supply that pulley. The Supreme Court did 'not consider the other exceptions, as they principally involved questions of fact,' so that all the other issues of law and of fact raised by the pleadings are undetermined.

"The pivotal issue of fact, consequent on the issue of law determined as aforesaid, is, did the plaintiff supply to the defendants a pulley for the line shaft which will turn that shaft 250 times per minute? If they did not, their action

must fail; if they did, their contract in that particular has been performed. The testimony shows, that to secure the diameter of a pulley on a line shaft which will revolve the line shaft 250 times per minute, two factors must be known. The factors are, the diameter of the engine pulley and the speed of the engine; giving these, the diameter is readily ascertainable of the pulley on the line shaft which will revolve it 250 times per minute. The engine pulley is that wheel on the engine from which a belt reaches to the pulley wheel on the line shaft; and the diameter of the first pulley is a matter of measurement with tape line. The speed of an engine is not synonymous with its power, but is the number of revolutions which the pulley wheel thereon makes per minute and that is a matter of ready measurement. The rule is well known amongst machine men, and it is this: Multiply the diameter of the engine pulley by the speed of the engine, divide that result by the desired revolutions per minute of the line shaft, and the quotient will be the required diameter of a pulley on the line shaft. On that issue there is no conflict in the testimony. It was the duty of the plaintiff to supply a pulley for the line shaft of such diameter as when receiving power from the engine pulley, would turn the line shaft 250 times per minute. The two factors to work out this problem lay in the knowledge and keeping of the defendants. The engine was purchased by defendants from a stranger to plaintiffs, the diameter of its pulley wheel and the speed of the engine were facts which the plaintiff had to learn from the defendants. The speed of the line shaft— that is, its revolutions per minute—was a factor which had been settled by the contract of the parties; the defendants 'agreed to furnish motive power to drive said machine, and to arrange to run the line shaft 250 revolutions per minute.' (Brief, p. 5, fol. 14.) The plaintiff sold the gin to be operated by a line shaft which should revolve a known number of times; a revolution of the shaft slower or faster than 250 times per minute would not secure results from the gin, and would not carry out the contract of the parties. It was man-

ifestly the duty of the defendants to advise the plaintiff of the speed of the engine, under their contract and under the necessity of the case. (Brief, p. 4, fol. 12.) The outfit was shipped to defendants on 3d of August, and on 2d of August the plaintiff wrote to defendants, 'please let us have at once the diameter of your engine pulley and face, together with the speed of the engine, so that we may figure out the proper size pulley to go on your line shaft to get the proper speed.' (Brief, p. 137, fol. 411.) On 7th August, the defendants wired plaintiff the diameter of engine pulley and its face (Brief, p. 138, fol. 412); and in answer thereto the plaintiff on the same day wrote: 'We must have the speed of the engine to determine the size of the pulley to go on the line shaft as per our letter of the 2d August.' (Brief, p. 83, fol. 248.) On 10th August, the defendants wrote to plaintiff, 'the speed of the engine is 180 revolutions, and the size of the pulley is twenty-five inches to go on line shaft, and the other pulley on engine is 2½ feet. Mr. Eidson has been using his ginnery with this machinery, and he used 25-inch pulley.' (Brief, p. 139, fol. 415.) On 11th August, the defendants wired plaintiff, 'pulley to drive gin 25 inches in diameter, this pulley to go on line shaft.' (Brief, p. 139, fol. 416.) On 15th August the plaintiff wrote the defendants, 'you say the speed of your engine is 180 revolutions, besides the pulley on line shaft is 2½ feet, and the size pulley you want to go on line shaft is to be 25 inches. Taking your engine running at 180 revolutions with a 30-inch pulley on it, we have figured it will be necessary for you to have a 21-inch pulley in diameter to give your line shaft the proper speed, and have ordered this pulley shipped to you direct,' etc. The pulley which the plaintiff did send was 21 inches in diameter, it was received the latter part of September (fol. 156); that pulley was never put on the line shaft, but is now in the possession of Mr. Seigler. The pulley which was put on the line, and is there now, is 20 inches in diameter, and was secured from Mr. Seigler by Edwards about the first of September. The defendants' counsel, with commendable

frankness, now declares he did not know the 21-inch pulley had never been used until after the appeal herein had been heard.    It was contended at the hearing that the plaintiff agreed at or about the time of the sale of the gin outfit, to inspect the engine, then at Eidson's, the then owner, and ascertain for itself the diameter of the engine pulley and the speed of the engine.    But the testimony on that issue is conflicting, and does not warrant the conclusion that the plaintiff so agreed.    The size of the line shaft pulley was not named in the contract, for the manifest reason that it would depend on the size of the engine pulley and the speed of the engine, and the engine had not then been purchased.

"The reason why defendants did not sooner furnish the plaintiff with the desired data is manifest.    Dr. Timmerman testified, 'upon their request about the driving wheel, we furnished the information as quickly as we could.    The face and diameter and also the make of the engine and its capacity as well as horse power.    I didn't know the revolutions it would make, but I told what had been done, and wrote them two or three times and stated the same thing every time, and they sent the pulley after awhile on that information.    I didn't know what to write, and wrote as I had wrote and sent the same answer every time.'    (Brief, fol. 212.)    It is not strange that Dr. Timmerman did not know the difference between the speed and the capacity of an engine, for some of the witnesses who testified as experts confounded these attributes.

"The testimony shows that the speed of a gin is accelerated or moderated according to the diameter of the line shaft pulley, other things being equal, a pulley on the line shaft of 20 inches diameter will revolve the line shaft faster than a pulley of 21 inches diameter, and very much faster than a pulley of 25 inches diameter.    (Testimony Williams, p. 56.) The testimony also shows that too slow a revolution of the line shaft as well as too fast a revolution of it will 'choke' the gin.    If, then, the plaintiff did furnish to the defendants a pulley for the line shaft which according to the rules of

science will revolve the shaft 250 times per minute, and if the defendants have not used the pulley so furnished, but have used another and smaller pulley, no wrong can be imputed to the plaintiff. It was argued by the defendants that the 20-inch pulley got from Seigler was put on the shafting by Edwards, the agent of the plaintiff; and it was also argued that Edwards deranged the engine of the defendants.

"But the defendants were bound by the contract to furnish 'motive power to drive the machinery;' the plaintiff had naught to do with the motive power, and any intermeddling which Edwards did with the engine was on his own account and not for his principal. So, too, the plaintiff advised the defendants what size pulley should go on the line shaft, and that size was shipped to defendants; Edwards had no authority or direction to put a smaller size pulley on the line shaft. The demand of defendants for a pulley on the line shaft 25 inches in diameter was unwarranted, and the plaintiff would have violated its duty to the defendants to have supplied them with a pulley of that size. Such a pulley had been used by Eidson when he operated the engine, but Eidson did not have a Pratt but a Monger gin.

"It would be fruitless to go into an enquiry of the causes of the apparent failure of the gin to do effective work. The witness, Seigler, went to the assistance of the defendants on 25th September (Brief, fol. 227), and he then found the engine too low in the sand and oblique from the line shaft; these serious defects he repaired. They were both traceable to the defendants, for the defendants set up the power, and set up the buildings to receive the gin. The line shaft was parallel with the building, but the building was not at right angles with the engine pulley. The witness, Marion Williams, testified that he measured the speed of the engine since this action was begun and found it to be 210 revolutions per minute, and that applied to a 20-inch pulley on the line shaft would revolve it 315 times per minute. Manifestly the plaintiffs are not responsible for the performances of the engine.

"It is not necessary to ascertain if the engine was defective; but if it was defective in its parts or in its operation, the fault is not that of the plaintiffs. The testimony warrants the conclusion that the ginning oufit is 'of good material and well made, and with proper management will perform what is claimed for it.' (Brief, fol. 35.) The contract sets out an itemized list of the outfit, and no defect therein has been shown which the plaintiffs have not repaired, as they were bound to do under the terms of their contract. The defendants have never tried the gin with an approved pulley, and they, therefore, cannot affirm that it cannot be made to 'perform the work of a capacity for which it was sold.' They, therefore, cannot tender it back. The defendants agreed 'to properly put up and operate the machinery according to printed directions furnished by the plaintiffs, and if the fault be traceable to not putting up and operating according to printed directions (defendants) agreed to pay all expenses incurred in rectifying it.' (Brief, fol. 36.) That is to say, for faults traceable to putting up and operating according to directions, the plaintiffs would not be liable.

"It is true, the defendants are men of high character, and it is also true, that the plaintiff is an old and respectable firm of Southern manufacturers, and its agent, Watkins, is a man of high character, from Anderson, in this State. It is not necessary, nor does the testimony warrant the imputation of unworthy motives to either side in this controversy. Upon consideration of the testimony, therefore, I am unable to sustain the allegations of the answer, so far as they charge that the conduct of the plaintiff and its agents was prompted by a fraudulent intent.

"The testimony does not warrant the conclusion that Watkins sold to the defendants one outfit, and delivered to them another and different outfit. It may be that Watkins represented to defendants that the gin had been tested, but not with the passage of seed cotton through its organism. The testimony does not warrant that conclusion; and if it did,

the representation was immaterial, for the warranty and not the test was the defendants' protection.

"The answer sets us three specific counter-claims, numbered in the answer as I., II., III. The issue of fraud eliminated from each, the other issue of law and fact therein are of a purely legal character. In the first paragraph the defendants demand of plaintiff $600, the cost of the gin house, the engine and boiler and the water supply therefor, and other machinery. Also, in the latter part of the same paragraph the defendants demand $500 of the plaintiff for the injury to defendant's reputation for business capacity, suffered because of their failure to serve the public as they had promised to do. Manifestly the defendants cannot keep the gin house, engine and boiler, and at the same time demand payment therefor at the hands of the plaintiff. And there is no sufficient proof that the reputation of the defendants has been damaged.

"In the said second paragraph the defendants demand of the plaintiff $200 to compensate defendants for the hire of hands, the parts of machinery and the freight on goods expended and incurred by defendants while working with the outfit. The testimony does not warrant this demand, and if the defendants did make an expenditure for the hire of hands, it was on their own account. The plaintiff did contract on 23d day of May, to deliver the outfit 'on or about the 1st July, 1899,' and it did promise to prepay the freight thereon. The freight was prepaid, but the outfit was not shipped until 3 August, 1899, and was not actually received by defendants until the first or second week in August (Brief, fol. 155). The defendants began ginning cotton on 4th September, 1899. For such delay, in the third paragraph, the defendants claim $600 damages as the rental value of a good working plant from 1 July to 4 September, and $400 for the rental value thereof from 4 September, to the balance of the season. On this counter-claim the defendants are entitled to be heard. The contract provides, 'the gin company is not to be responsible for any delays in shipping from any cause except its own employees' negligence, and in

13—69

no case shall damage for delay in shipping amount to more than the rental value of the property for the time of such delays.' (Brief, fol. 23.) The contract, therefore, provides for a case of delay, what delay shall make plaintiff liable therefor, and it fixes the measure of damages. Delivery on July 1, was not of the essence of the contract, so that if the delivery was not then made, the defendants might rescind the contract. Even if that be so, the defendants waived their right by receiving the outfit. But there was delay in delivery of the outfit, the *cause* is not apparent, and there was delay in sending the pulley,. for plaintiffs advised defendants on 15th August it would be sent forthwith, and it was not received until the latter part of September. The plaintiff ought to be heard on the just cause of these delays; and if the cause be not just, then the defendants ought to be heard on the damage to them. .On these issues I am totally unable to pass; they are bald questions of fact for a jury.

"I am, therefore, of the opinion, and so decree, that the plaintiff is entitled to recover of the defendants the sum of $1,444, with interest thereon, as stipulated at fol. 22 of the Brief, and to have a sale of the property to pay the same, and judgment for any deficiency.

"But let the plaintiff's hands be stayed until the issues above indicated have been tried by a jury; so that, if the defendants have anything in their counter-claim, it may be deducted from the recovery of the plaintiff.

"Let the cause be entered on Calendar No. 1, and let these issues below designated be submitted to a jury for its verdict, to wit:

"(1) Was the delay in delivering to the defendants the ginning outfit after 1 July, including the pulley for line shaft after 15 August, due to the negligence of the plaintiff?

"(2) If nay, then the third question need not be answered at all.

"(3) If yea, what was the rental value of the said property for the time of such delay?

"On these issues, let the defendants be the actor; and let

the answers of the jury be submitted back to this Court. Either party hereto shall have any further order, which may be necessary to carry out the findings herein."

From this decree the defendants appeal.

*Messrs. P. A. Emanuel* and *J. Wm. Thurmond,* for appellants. *Mr. Emanuel* cites: *New trials in equity are de novo:* 44 S. C., 106; 13 Ency. P. & P., 859, note 2; 30 S. C., 335. *Facts adjudicated by this Court could not again be referred:* 37 S. C., 150; 51 S. C., 335; 6 S. C., 278; 44 S. C., 106; 34 L. R. A., 321. *Judge cannot refer legal issues:* 22 S. C., 320; 19 S. C., 286; 25 S. C., 72; 12 S. C., 108; 16 S. C., 333; 18 S. C., 232; 25 S. C., 589; 27 S. C., 418; 23 S. C., 370; 44 S. C., 148, 119. *Order of reference to take testimony may be disregarded by succeeding Judge:* 9 Rich. Eq., 423; 43 S. C., 316; 66 S. C., 459; 65 S. C., 574. *Master is liable for carelessness of agent:* 20 Ency., 163-4, 170; Rice L., 215; Dud. L., 268, 270; 5 Rich. L., 44; 29 S. C., 387; 18 S. C., 270; 3 S. C., 583; 28 S. C., 261; 29 S. C., 387; 42 S. C., 454; 13 S. C., 5; 47 S. C., 147; 58 S. C., 145.

*Messrs. Croft & Salley,* contra, cite: *Order of reference may be granted at chambers:* 55 S. C., 379; Code of Proc., 1902, 402. *Proper to grant order of reference on equitable issues:* 27 S. C., 235; 10 S. C., 476; 23 S. C., 145. *Judge cannot set aside order of reference by predecessor:* 39 S. C., 453.

May 16, 1904. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are set forth in the opinion of the Supreme Court upon the former hearing, and reported in 62 S. C., 441, 40 S. E., 941.

In order to understand the manner in which the issues raised by the pleadings were disposed of by the Circuit Court,

it will be necessary to set out a copy of the decree of his Honor, Judge Gage, in the report of the case.

There are numerous exceptions, but it will not be necessary to consider them in detail.

The first question that will be considered is whether the defendants were entitled, as matter of right, to a trial by jury of any issue raised by the pleadings. The plaintiffs by their complaint not only seek to recover a judgment for money, but likewise the foreclosure of a lien. The cause of action set forth in the complaint is, therefore, unquestionably equitable in its nature. The defendants in their answer, "by way of affirmative relief, or counter-claim," allege fraud, misrepresentation, failure of consideration and non-compliance by the plaintiffs with the terms of the contract set forth in the complaint, and in the prayer to their answer ask, "that the contract of defendants with plaintiffs to give notes and keep said machinery, be rescinded; that these defendants have the sum of sixteen hundred dollars damages allowed them for the specific causes set forth in answer herein; that said machinery be sold and the proceeds applied to the liquidation of said damages, costs, &c., and for such other relief as is equitable and just." The only issues of fact of which a party to the action has the right to demand trial by a jury, are in actions for the recovery of money *only,* or of specific real or personal property. Code, section 274. This case does not fall within the provisions of the section of the Code just mentioned, and the defendants did not have the right to insist upon a trial by jury.

There is another reason why the defendants could not successfully insist upon a trial by jury. The facts alleged in the answer grew out of the contract set forth in the complaint, and were interwoven with it. They entered into the plaintiff's equitable cause of action as part of the transaction set forth in the complaint, and in the language of the Court in *Gregory* v. *Perry,* 66 S. C., 459, "the pleadings raised no issue separate and distinct from the equitable cause of action stated in the complaint, nor did they raise issues involving

the recovery of money only, or of specific real or personal property. A trial of the issues by a jury was, therefore, not demandable of right"—citing *Ins. Assn.* v. *Berry,* 53 S. C.; 129, 31 S. E., 129. To the same effect is *McLaurin* v. *Hodges,* 43 S. C., 187, 31 S. E., 53. All the issues raised by the pleadings were equitable in nature, and if his Honor, the presiding Judge, sitting as a chancellor, had seen fit to exercise his power, he could have disposed of all the issues raised by the pleadings, and was not compelled to have referred any of the issues to a jury. There is no appeal either by the plaintiffs or the defendants from that part of the order referring certain issues to the jury. It, therefore, remains of force, and must be carried into effect when the case is remanded to the Circuit Court.

We will next dispose of the question whether the Circuit Court erred in construing the opinion of this Court upon the former trial. By reference to that opinion it will be seen that the only question which this Court undertook to decide was whether his Honor, the Circuit Judge, correctly interpreted the contract entered into between the parties. The construction of the opinion of this Court by the Circuit Judge was free from error.

The next question that will be considered is whether his Honor, Judge Aldrich, had jurisdiction to grant an order of reference at chambers. The case of *Green* v. *McCarter,* 64 S. C., 290, 42 S. E., 157, shows that the exceptions raising this question cannot be sustained.

The exceptions also raise the question whether his Honor, Judge Aldrich, erred in ordering that the parties to the action have leave to introduce additional testimony. When a new trial is ordered in an equity case, any of the parties to the action may rely upon the testimony taken by the master or referee upon the former hearing. They may also make a motion for an order allowing them to offer additional testimony, which should be granted by the Circuit Judge, if, in the exercise of his discretion, he is of the opinion that such order will subserve the ends of justice. He may

determine this question from an inspection of the pleadings. *Green* v. *McCarter,* 64 S. C., 290, 42 S. E., 157.

The exceptions likewise raise the question whether a succeeding Circuit Judge has the power to alter or modify the order of his predecessor, referring it to the master simply to take and report the testimony. Such an order is merely administrative, and may be changed by a succeeding Circuit Judge. *Gregory* v. *Perry,* 66 S. C., 459, 45 S. E., 4; *Ins. Co.* v. *Berry,* 53 S. C., 131, 31 S. E., 53. When, however, an order refers the issues of law or of fact to a master or referee, such order is binding upon the succeeding Judge. *Cudd* v. *Williams,* 39 S. C., 452, 18 S. E., 3.

These views practically dispose of all the exceptions except those assigning error in findings of fact.

This Court concurs with the Circuit Judge in his findings of fact, and is satisfied with his reasons for such findings.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.