## 10336

NATIONAL CITY BANK v. HUEY & MARTIN DRUG CO. *ET AL.*
(102 S. E. 516.)

1. APPEAL AND ERROR—RULING THAT ISSUES WERE TRIABLE BY JURY HARMLESS WHERE NONE WERE SUBMITTED.—Preliminary ruling that certain issues were triable by jury was harmless; no issue having been submitted to the jury

2. FRAUDULENT CONVEYANCES—SALE IN BULK OF STOCK WITHOUT ATTEMPT TO COMPLY WITH STATUTES CONCLUSIVELY FRAUDULENT.— Under Bulk Sales Law, sale in bulk of a merchant's stock without any attempt to comply with the law is unlawful, and voidable at the instance of a creditor of the seller injured thereby, without regard to intention of the parties thereto; it being only where there is an attempt to comply with the statute, and a failure in some particulars, that there is a rebuttable *prima facie* presumption of fraud.

ON PETITION FOR REHEARING.

3. FRAUDULENT CONVEYANCES—AMOUNT OF RECOVERY WHERE GOODS AND STORE FIXTURES WERE SOLD TOGETHER.—It is unnecessary to decide whether the words "stock of merchandise," in Bulk Sales Law, include the store fixtures, sold along with the merchandise, where both parties to the transaction have considered the price to be paid for both as a single fund applicable to payment of the claims of all the seller's creditors and the greater part of it has been so applied.

4. FRAUDULENT CONVEYANCES—LIABILITY OF BUYER IN BULK NOT LIMITED TO PURCHASE PRICE.—By the provisions of Bulk Sales Law, in case of a sale in violation thereof, liability to creditors of the seller is not limited to the agreed price; but the goods, if still in the buyer's hands, are liable, and, if he has withdrawn them, he is liable for "the value" of the goods so received by him and thus withdrawn.

Before GARY, J., Spring term, 1919.    Affirmed.

Action by the National City Bank against the Huey & Martin Drug Company and the Calhoun Drug Company, based on indebtedness of the Huey & Martin Company to plaintiff and sale by that company to the Calhoun Company without compliance with the Bulk Sales Law. Verdict for plaintiff for $689.12 was directed against both defendants, and from a judgment entered thereon the defendants appeal.

The sections of the Code of Laws of 1912, requested to be set forth in the report of the case by Mr. Chief Justice Gary, are as follows:

Sec. 2434. It shall be unlawful for any merchant or corporation engaged in the buying and selling of merchandise, while he or it is indebted to any person or corporation, to sell his or its entire stock of merchandise in bulk, or to sell the major portion thereof, otherwise than in the ordinary course of trade, in the regular and usual prosecution of the seller's business, and with the intention of ceasing to conduct said business, in the same manner and at the same place as he or it has heretofore conducted the same, without first making a full and complete inventory of the merchandise so proposed to be sold, in which inventory the values shall be extended at the ruling wholesale price thereof; and with-

out further making a full, true and correct schedule of all persons or corporations to whom he or it is indebted, stating therein the postoffice address of each of said creditors, and the amount owing to each of them; to which inventory and schedule there shall be attached the oath of the seller that the same is true and correct; or if the seller shall assert that he or it is not indebted to any person or corporation, he or it shall make affidavit to that effect and deliver the same to the purchaser, with the inventory, as hereinafter provided. The seller shall deliver said inventory and schedule to the proposed purchaser, and shall retain exact copies thereof in his or its own possession; the seller and the purchaser shall each preserve such inventory, schedule and affidavit for the period of six months after such sale and purchase, and the same shall be open to the inspection of the creditors of the seller. Ten days before such sale shall be consummated, and before the purchaser take possession of the merchandise so proposed to be sold, the seller and proposed purchaser shall join in giving written or printed notice of the proposed sale and purchase of such merchandise to each of the creditors named in such schedule; such notice may be delivered in person to such creditors, or transmitted to them by registered letter through the United States mail, by being deposited in the United States postoffice at the place where the seller has heretofore conducted business or nearest thereto, properly addressed to the respective creditors at the postoffice address given in such schedule, with proper postage affixed; such notice shall state the aggregate value of the merchandise proposed to be sold as shown by such inventory, the consideration to be paid therefor, and the time and manner of making such payment. If said seller shall fail to make such inventory of such merchandise, or if such inventory shall fail to state the true value of said goods as above required, or if said seller shall fail to make such true schedule of creditors as hereinafter provided, and the purchaser shall have knowledge of that fact, or in event the

seller shall assert that there are no debts against him or it, if the purchaser shall fail to require the affidavit above provided, or if the seller and purchaser shall fail to give each of said creditors named in said schedule the notice above required in the manner above provided, or if such notice shall not correctly state the amount of such merchandise proposed to be sold, and the consideration to be paid therefor, and the time and manner of making the same, then and in either of such events such sale shall *prima facie* be presumed to be fraudulent and void as against the creditors of such seller, and the merchandise in the hands of the purchaser, or any part thereof, if it shall be found in his or its hands, shall be liable to such creditors, and in event the same, or any part thereof, shall be withdrawn by said purchaser, then the purchaser himself or itself personally shall also be liable to said creditors of such seller to the extent of the value of the merchandise so received by him or it and thus withdrawn.

Sec. 2435. Whenever a notice, as provided in section 1488, is sent by registered mail, the creditor or person to whom the notice is mailed shall be presumed conclusively to have received the notice, and the time of the notice shall be dated from the time of the mailing and registration, or actual service of said notice.

Sec. 2436. Except as expressly provided in the preceding sections, nothing therein contained, nor any act thereunder, shall change or affect the present rules of evidence or the present presumption of law.

*Mr. J. Harry Foster,* for Huey & Martin Drug Co., appellant, submits : *That the case under the pleadings and issues should have gone to the jury:* 91 S. C. 461 ; 1 Strob. 301 ; 28 S. C. 149 ; 8 S. C. 290 ; 10 L. R. A. 676 ; 85 S. C. 479 ; 106 S. C. 267 ; 89 S. C. 484 ; 93 S. C. 71. *As to the meaning of prima facie:* 8 L. Ed. 514 ; 27 Am. St. Rep. 329 ; 17 Am. St. Rep. 248 ; McKelvie on Ev., p. 64

*Mr. W. J. Cherry,* for Calhoun Drug Co., appellant, submits : *The Bulk Sale Statutes of this State are unconstitutional:* Constitution of South Carolina (1895), article I, secs. 5 and 17; and article V, and section 1 of article IV of the amendments of the Constitution of the United States; 182 N. Y. 330; 2 L. R. A. (N. S.) 338; 75 N. E. 404; 126 App. Div. 421; 110 N. Y. Supp. 585; 80 Ohio St. 207; 71 N. E. 631; 84 Ohio St. 328; 95 N. E. 900; L. R. A. 1916c, 1023; 110 N. E. 648; 235 Ill. 40; 20 L. R. A. (N. S.) 167; 6 L. R. A. 621, and notes; 115 Mo. 307; 21 Utah 387; 65 L. R. A. 308; 101 Am. St. Rep. 971; 36 Idaho 438, L. R. A. 1915e, 923. *The Bulk Sales Law of this State is a criminal statute:* 1 Bishop on Criminal Law, sec. 300; 8 Enc. of Law, pp. 287, 299. *The South Carolina Statute cannot be sustained as a police regulation:* 26 Idaho 438, L. R. A. 1915e, 923; 27 Utah 387; 65 L. R. A. 308; 101 Am. St. Rep. 971; 211 U. S. 489; 53 L. Ed. 295; 182 N. Y. 330; 2 L. R. A. (N. S.) 338; 75 N. E. 404; 70 Ohio St. 207; 71 N. E. 631; 217 U. S. 411; 54 L. Ed. 839. *Prima facie means first appearance, and a prima facie presumption is always rebuttable:* 22 Enc. of Law 1294; 99 Minn. 22; 108 N. W. 940; 93 Md. 432; 49 Atl. 661; (Okla.) 2 L. R. A. 334; 118 Wis. 424; 95 N. W. 392; 26 Enc. of Law 216. *The Bulk Stales Statutes of this State provide no new remedies:* 33 S. C. 538; 66 S. C. 141; 69 S. C. 196-7; Code of Civil Procedure, ch. IV; (Okla.) 2 L. R. A. 334. *The only remedy under the Bulk Sales Statutes is a general creditors' bill:* 4 S. C. 514; 53 S. C. 583. *If they were set aside for fraud, actual or constructive, respondent would only be entitled to his pro rata share of the proceeds of the merchandise:* (Tenn.) 51 L. R. A. (N. S.) 343; 200 Mass. 588; 86 N. E. 942; (Texas) 146 S. W. 239; Bump on Fraud, Conveyances, secs. 622, 631. *The word "merchandise" as used in such statutes does not include "fixtures:"* 26 Idaho 438, L. R. A. 1915e, 923; (Minn.) 104 N. W. 371; 37 Wash. 206; 79 Pac. 628.

*Messrs. Dunlap & Dunlap,* for respondent, submit: *Testimony by the maker of promissory notes that he got no value for the notes is incompetent as against an innocent purchaser for value before maturity, and it was proper to strike out such testimony:* 105 S. C., p. 100. *Sections 2432, 2435 and 2436, vol. I, 1912, are constitutional:* (N. C.) 81 S. E. 417; (West Virginia) 91 S. E., p. 386. *The act is constitutional when it declares the violation of the act fraudulent and void:* 102 Am. St. R., p. 322. *The statute in question is a valid exercise of police power:* 94 A. S. R. 889 (Washington) ; 97 A. S. R. 851 (Tennessee) ; 106 S. C. 362; 103 U. S. 344; 26 L. Ed. 565.

January 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

I think the judgment is right and ought to be affirmed. There was no prejudicial error. If it be conceded that the issues were all equitable, and, therefore, triable by the Court, they were so tried. The preliminary ruling that certain issues were triable by jury was not prejudicial, because no issue was in fact submitted to the jury.

The statute starts out by denouncing as unlawful certain sales, without compliance with its provisions, which are in the main: (1) The making of a complete inventory; (2) a true schedule of the seller's creditors, or an affidavit of no indebtedness; and (3) the giving of joint notice by seller and purchaser to each creditor of the proposed sale. It then goes on to provide that, if the seller shall fail to make such inventory, or if the same shall fail to state the true value of the goods as required, or if the seller shall fail to make such true schedule of his creditors as required, and the purchaser shall have knowledge of that fact, or if the seller asserts that he owes no debts and the purchaser fails to require the affidavit of that fact, or if the

joint notice is not given to each creditor, or if the same be incorrect as to the amount and consideration of the sale and the time and manner of payment therefor, "then and in either of such events, such sale shall *prima facie* be presumed to be fraudulent and void as against the creditors of such sellers," etc.

The intention of the legislature was that, if a sale within the terms of the statute be made without any attempt to comply with the provisions thereof, it should be held to be unlawful, and voidable at the instance of a creditor of the seller who may be injured thereby, without regard to the intention of the parties to the sale. But if the parties attempt to comply with the provisions of the statutes, and fail in some particular or particulars, such failure shall not necessarily have the effect of making the sale void, but it shall only have the effect of raising a presumption that it is fraudulent. The difference lies in the failure to make any effort at all to comply with the provisions of the statute, and in making an effort which falls short of a legally sufficient compliance. In the first case, the sale is unlawful. In the second, it is only presumptively so—the presumption being slight or strong, according to the nature and extent of the failure and the circumstances of it. For example, notwithstanding the exercise of reasonable care and diligence, errors or omissions may occur in making the inventory, or the schedule of creditors, or in complying with other requirements of the statute. In such cases the act creates only a *prima facie* presumption of fraud which may be rebutted by showing the good faith of the parties to the sale and honest and diligent efforts to comply with the statute. No doubt the provision was intended to prevent fraudulent evasions of the statute, and to stimulate the parties to make an honest effort to comply substantially with its provisions.

But where, as in this case, the statute is utterly ignored and no attempt whatever is made to comply with its provi-

sions, to hold that only a *prima facie* presumption of fraud is raised, which may be rebutted by proof of the good faith of the parties, would practically nullify the statute.

Judgment affirmed.

MESSRS. JUSTICES WATTS, FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY, *dissenting.* The complaint herein contains two causes of action—one to set aside the sale in bulk by the defendant, Huey & Martin Drug Company, to the defendant, Calhoun Drug Company, of its stock of merchandise, etc., on the ground that such sale was in violation of sections 2434, 2435 and 2436 (which will be set out in the report of the case); and the other on the ground that the sale was fraudulent under the statute of Elizabeth. At the conclusion of the testimony his Honor, the presiding Judge, made the following order:

"This action having been brought on for a hearing before the Court and a jury, and the evidence being all in, and a motion having been made by plaintiff's counsel for a direction of verdict, after hearing argument of counsel for and against said motion, I find and hold as follows: That the undisputed testimony shows that the Huey-Martin Drug Company and the Calhoun Drug Company, in the sale and purchase of the stock of drugs, etc., which is the basis of this action, in bulk, failed to comply with the requirements of the law known as the 'Bulk Sales Law,' contained in sections 2434, 2435 and 2436 of volume I, Code of Laws of South Carolina of 1912; also appearing as sections 448, 449 and 450, in volume II, Code of Laws of South Carolina of 1912. The undisputed testimony also shows that the defendant, Calhoun Drug Company, the purchasers of said stock, have sold and disposed of said stock of merchandise in the ordinary course of their drug business to an amount equal to the amount due on the notes sued on in this action. I am, therefore, of the opinion that the plaintiff is entitled to a direction of a verdict against the Huey-Martin Drug Company and

the Calhoun Drug Company for the amount sued for, in the sum of six hundred and eighty-nine and 12/100 ($689.12) dollars; and it is so ordered.   My conclusion, as above stated, is based upon the view that the statutes referred to make it a *prima facie* presumption of fraud for the seller and purchaser of a stock of merchandise in bulk to fail to comply with the requirements of said statutes provided with reference to such sales, and upon this *prima facie* presumption such failure must be held to be fraudulent as to the creditors of the seller of such stock of merchandise, and that this presumption of fraud is not rebuttable by evidence of the good faith of the parties to such sale; the good or bad faith of the parties having nothing to do with the result."

The Circuit Judge also ruled that the objection to the constitutionality of the said sections, on the ground that they were in violation of sections 5 and 17, art. V, of the State Constitution, and of article V, and of section 1 of the fourteenth amendment to the Constitution of the United States, could not be sustained.   The first question that will be considered is whether there was error in this ruling.   It is only necessary to cite the case of *Kidd, Dater & Price Co. v. Musselman Grocer Co.,* 217 U. S. 461, 30 Sup. Ct. 606, 54 L. Ed. 839, which shows that the exception raising this question cannot be sustained.

The next question that will be considered is whether there was error in the ruling that the presumption mentioned in the statute is not rebuttable by evidence of the good faith of the parties to such sale; the good or bad faith of the parties having nothing to do with the result.   Section 2434 provides that "in either of such events such sale shall *prima facie* be presumed to be fraudulent and void as against the creditors of such seller," and the language of section 2436 is: "Except as expressly provided in the preceding sections, nothing therein contained, nor any act thereunder, shall change or affect the present rules of evidence or the present presumption of law."

Our construction of the statute is that, where the parties to the sale of a stock of merchandise in bulk fail to comply with the statutory requirements, a presumption arises that the sale was fraudulent and void, and the burden of proof rests upon the parties to the sale to show that the transaction was in good faith; in other words, that the statute was intended to be merely a rule of evidence, casting upon the parties to the sale the burden of proof as to the *bona fides* of the transaction. No other construction will give force and effect to all the provisions of the statutes. The exception raising this question is sustained.

When the case was called for trial, his Honor, the presiding Judge, made the following order:

"After hearing motion of the defendants to refer to a referee all the issues arising out of the pleadings, except the liability on the notes of the defendant, Huey-Martin Drug Company, now owned by the plaintiff, and after a consideration of the pleadings, it is ordered that the following issues be submitted to the jury: First, whether or not there is any liability on the part of the defendant, the Calhoun Drug Company, upon said notes. Any equitable issues raised by the pleadings are subject to the further orders of this Court, except such as arise incidentally in the determination of the above issues."

The issues under both causes of action were equitable in their nature, and were not properly triable by a jury. *Ex parte Landrum*, 69 S. C. 136, 48 S. E. 47; *Pratt v. Timmerman*, 69 S. C. 186, 48 S. E. 255; *Mobley v. McLucas*, 99 S. C. 99, 82 S. E. 986; *Rainwater v. Bank*, 108 S. C. 206, 93 S. E. 770; *Oliver v. McWhirter*, 109 S. C. 358, 96 S. E. 140.

These conclusions practically dispose of all questions presented by the exceptions.

For these reasons, I dissent.

## ON PETITION FOR REHEARING.

PER CURIAM. The appellant, Calhoun Drug Company, petitioners for a rehearing, contending that, in affirming the judgment of the Circuit Court, this Court overlooked its contention that the statute denounces as unlawful, unless its terms are complied with, the sale of any merchant, etc., of his "stock of merchandise;" that those words are not sufficiently comprehensive to include "store fixtures" sold with the stock of merchandise; that in this case the price of the "stock of merchandise" was $1,819.31, and that of the "fixtures" was $2,018.76, making a total of $3,838.07; that $3,538.07 of the total purchase price had already been paid to other creditors of the seller, leaving in the hands of the purchaser only about $300, and that, besides, plaintiff's claim, there are still others unpaid, amounting to about $161; that, upon these figures, if only the price of the "stock of merchandise" is available to pay creditors, "as contended by the petitioners," then plaintiff's *pro rata* would be only 46 per cent., but if the total purchase price is to be taken into account, then it would be only about 87 per cent.; and, therefore, the Court erred in giving plaintiff judgment against the Calhoun Drug Company for the full amount of its claim.

We are not called upon in this case to decide whether the words "stock of merchandise" are sufficiently comprehensive, or were intended by the legislature (in view of the general purpose of the statute and the evils which it was designed to prevent and remedy) to include the store furniture and fixtures of a merchant who sells them along with his "stock of merchandise," with the intention of closing out and ceasing to carry on his business, because both parties to the transaction have considered the total purchase price, which was to be paid by the purchaser for the "stock of merchandise" and the "fixtures" as a single fund applicable to the payment of the claims of all the creditors of the seller,

and the petitioner's statement shows that all of the fund (except about $300) has been so applied.

Moreover, petitioner's contention erroneously assumes that the creditors must be satisfied with the price agreed upon by the seller and purchaser.   One purpose of the statute in requiring the inventory and schedule of creditors and notice of the proposed sale to be given to each creditor was to give the creditors opportunity to ascertain whether the price and terms of payment were fair and reasonable, and, if not, to take such steps as they might be advised to protect their interests, and the record shows that the sale was made at a discount of 25 per cent. from the market price.

When the parties to the sale fail to comply with its provisions, the statute imposes upon the purchaser liability to the creditors of the sellers in the following language:

"The merchandise in the hands of the purchaser, or any part thereof, if it shall be found in his or its hands, shall be liable to such creditors, and in the event the same, or any part thereof, shall be withdrawn by said purchaser, then the purchaser himself or itself personally shall also be liable to said creditors of such seller to the extent of the value of the merchandise so received by him or it and thus withdrawn."

It will be seen from the language quoted that the creditors are not relegated to the purchase price alone, as the petitioner erroneously assumes, for that may have been paid to the seller and disposed off; but they may also follow the goods in the hands of the purchaser, and, if he had disposed of them, the statute makes him personally liable to the creditors to the extent of the value of the goods so received by him and disposed of.   As the testimony showed that petitioner had received and disposed of more than enough goods in value to pay plaintiff's claim, the Court properly directed a verdict against the petitioner, as well as the original debtor, for the full amount of the claim.

For the reasons stated, the petition is dismissed.

MR. CHIEF JUSTICE GARY.   I concur in dismissing the petition on the ground that no material question of law or of fact was either overlooked or disregarded.