## KIDD, DATER AND PRICE COMPANY *v.* MUSSELMAN GROCER COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 149.　Argued April 13, 14, 1910.—Decided May 16, 1910.

Where this court has held a state statute constitutional it will follow that decision in a case involving the constitutionality of a statute of another State which fundamentally is similar and which is attacked on the same ground by persons similarly situated; and so held that the Michigan Sales-in-Bulk Act of 1905 which is fundamentally similar to the Sales-in-Bulk Act of Connecticut, sustained in *Lemieux* v. *Young*, 211 U. S. 489, is not unconstitutional under the due process or equal protection clauses of the Fourteenth Amendment.

It is within the police power of the State to require tradesmen making sales in bulk of their stock in trade to give notice to their creditors and also to prescribe how such notice shall be given, and unless the provisions as to such notice are unreasonable and arbitrary a statute to that effect does not amount to deprivation of property, abridge liberty of contract or deny equal protection of the law within the meaning of the Fourteenth Amendment; nor is the requirement in the Michigan Sales-in-Bulk Act of 1905 that such notice be either personal or by registered mail unreasonable or arbitrary.

151 Michigan, 478, affirmed.

THE facts, which involve the constitutionality of the Sales-in-Bulk Act of 1905 of Michigan, are stated in the opinion.

*Mr. G. M. Valentine*, with whom *Mr. E. L. Hamilton*,

*Mr. G. W. Bridgman* and *Mr. E. B. Valentine* were on the brief, for the plaintiff in error:

The enforcement of the act deprives a merchant of his property without due process of law, by making it extremely difficult, if not impossible, whenever he may be in debt, as he usually is when he makes such a sale, to sell his stock otherwise than in the ordinary course of trade, even though he may desire to make the sale for honest purposes.

The requirements for an inventory and list of creditors impose unreasonable restraints upon trade.

Suppose that the list is not full, accurate, and complete, may the purchaser rely upon the sworn certificate of the seller, or must he independently ascertain its accuracy and rely upon it at his peril?

The requirement that notice be given to all creditors, whether their claims are due or not, five days in advance of the sale, either personally or by registered mail is onerous and arbitrary.

The argument in support of the act in *Spurr* v. *Travis*, 145 Michigan, 721, is that, if an owner owes no debts, no delay is required, and an owner who is in debt may qualify himself at once by paying his debts, or if not, the sale is postponed until notice is given as the statute provides. But how shall the purchaser know that there are no creditors? The act may not literally take property without due process of law, but it annihilates its value and destroys its attributes. *Wright* v. *Hart*, 182 N. Y. 330.

If this legislation is valid, then it is competent for the legislature to make every transfer of a debtor's property, real and personal, void. The property rights guaranteed by the Fourteenth Amendment consist not merely in the title or right to the possession of property, but also the right to make any lawful use of the property and the right to pledge or mortgage it, sell or transfer it, and the right to buy it, so long as the sale or transfer is not made for fraudulent purposes. *Kuhn* v. *Common Council.* 70 Michigan. 534.

Nothing less than an opportunity to be heard in court upon the question of the honesty of a purchase and sale can be due process of law. *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701.

The enforcement of the act deprives an honest purchaser of a stock of goods of his property without due process of law, by compelling him to pay for the goods twice, if the terms and conditions of the act have not been followed, and good faith is no defense. Every citizen is entitled to the presumption of honesty, and his dishonesty and his fraud must be proved before he can be deprived, either of his liberty, his property, or his good name. *Kuhn* v. *Common Council*, 70 Michigan, 534.

The statute is not of the slightest use as a protection to creditors, for it may always be evaded, as, for instance, by *Hannah & Hogg* v. *Richter Brewing Company*, 149 Michigan, 220; 12 L. R. A. (N. S.) 178.

The only benefit to the creditors is in case the requirements of the statute are not observed, and then the benefit is not *pro rata* but only to those bringing suits.

A distinguishing peculiarity of this statute is that no benefits flow to creditors of merchants from its observance.

The enforcement of the act enables a purchaser who has obeyed it, and who is also a creditor of the seller, to deprive other creditors of their property without due process of law.

The enforcement of the act deprives a creditor of his property without due process of law, by destroying all remedy against the debtor's goods, probably at once, and certainly after five days from time of receiving notice of the proposed sale.

Before the enactment of this statute, a creditor might in a proper case maintain an action of replevin or trover within six years from the time the cause of action accrued, Comp. Laws of Michigan, 1897, § 9728, or obtain an attachment; Comp. Laws of Michigan, 1897, c. 292; but all these remedies against the property of the debtor are destroyed by the act

in question, unless brought within five days after receiving the notice of the transfer.

To prescribe an unreasonably short period of limitation is an impairment of the obligation of contracts, or a taking of property without due process of law. 19 Am. & Eng. Enc. of Law, 2d ed., 169, 170; *Price* v. *Hopkin*, 13 Michigan, 318, 324, and cases cited.

Legislation similar to the act here involved, and for the same general purpose, has been enacted in many States. Such acts have been held violative of both the state and United States Constitutions, in the States of New York, Ohio, Indiana, Illinois, Utah, and Virginia, on the ground that the effect of such statutes is to cause the deprivation of property without due process of law, and that the same does not afford to persons interested, the equal protection of the laws. *Wright* v. *Hart*, 182 N. Y. 330; 75 N. E. Rep. 404; *Miller* v. *Crawford*, 70 Oh. St. 207; 71 N. E. Rep. 631; *McKinster* v. *Sager*, 163 Indiana, 671; 72 N. E. Rep. 854; *Block* v. *Schwartz*, 27 Utah, 387; 101 Am. St. Rep. 971; 65 L. R. A. 308; *Off & Co.* v. *Morehead*, 235 Illinois, 40; 85 N. E. Rep. 264.

Statutes for the same general purpose have been held valid in Massachusetts, Tennessee, Washington, and Oklahoma, but the statutes of all those States are easily differentiated from the Michigan statute. *Squire & Co.* v. *Tellier*, 185 Massachusetts, 18; 69 N. E. Rep. 312; *Neas* v. *Borches*, 109 Tennessee, 398; 97 Am. St. Rep. 851; 71 S. W. Rep. 50; *McDaniels* v. *J. J. Connelly Shoe Company*, 30 Washington, 549; 60 L. R. A. 347; 94 Am. St. Rep. 889; *Williams* v. *Fourth National Bank*, 82 Pac. Rep. 496 (Okla.); 2 L. R. A. (N. S.) 334.

In Wisconsin and Maryland, such statutes have been before the court, but the question of their constitutionality does not seem to have been raised. See *Fisher* v. *Herrman*, 118 Wisconsin, 424; *Hart* v. *Roney*, 93 Maryland, 432. A statute of Connecticut, having but slight resemblance to the Michigan statute, was held valid by this court in *Lemieux* v.

*Young,* 211 U. S. 489, but the case can be distinguished as the statutes differ in many respects.

Liberty of a citizen includes the right to acquire property, to own it, use it, buy it, or sell it, so long as his acts are without intent to defraud. When the owner is deprived of the right to sell property, he is deprived of the property itself, within the meaning of the Constitution, by having one of the incidents of ownership taken away from him. *Allgeyer* v. *State of Louisiana,* 165 U. S. 578; *Butchers' Union* v. *Crescent City Co.,* 111 U. S. 746; *Lochner* v. *New York,* 198 U. S. 53; *In re Jacobs,* 98 N. Y. 98; *People* v. *Gillson,* 109 N. Y. 389; *Braceville Coal Co.* v. *People,* 147 Illinois, 66, 71; *Ritchie* v. *People,* 155 Illinois, 98, 104; *Frorer* v. *People,* 141 Illinois, 171; *Commonwealth* v. *Perry,* 155 Massachusetts, 117; *Cleveland* v. *Clements Bros. Const. Co.,* 67 Ohio St. 197, 219. Dissenting opinion in *Neas* v. *Borches,* 109 Tennessee, 398; *Bank* v. *Divine Grocery Co.,* 12 Pickle, 611; *Off & Co.* v. *Morehead,* 85 N. E. Rep. 266. An act of the legislature which takes away a right by refusing a remedy *in toto* or except on impossible conditions, is as much a violation of the Constitution as though the right were taken away in express terms. *Gilman* v. *Tucker,* 128 N. Y. 190.

The terms, "law of the land" and "due process of the law" do not mean merely an act of the legislature. *Board of Education* v. *Bakewell,* 122 Illinois, 339; *Clark* v. *Mitchell,* 64 Missouri, 578; *Calhoun* v. *Fletcher,* 63 Alabama, 574; *Saco* v. *Wentworth,* 37 Maine, 165.

The law of the land does not mean merely an act of the legislature, for such a construction would abrogate all restrictions on legislative power. 10 Am. & Eng. Enc. of Law, 2d ed., 291, 292; citing Cooley's Cons. Limit., 6th ed., 431; *Taylor* v. *Porter,* 4 Hill, 140, 145; and see *In re Siebold,* 23 Fed. Rep. 791; *Moore* v. *State,* 14 Vroom (43 N. J. L.), 203; *Dorman* v. *State,* 34 Alabama, 216.

There is no justification for the legislation under the police power. The individual may pursue without let or hindrance

from anyone all such callings as are innocent in themselves, and not injurious to the public.

The statute has no such effect as the preservation of the public safety or welfare, but under the guise of police regulation is an invasion of the property rights of the individual. *Chaddock* v. *Day*, 75 Michigan, 527; *Matter of Frazee*, 63 Michigan, 396; *People* v. *Gillson*, 109 N. Y. 389; *In re Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377; *Fisher Co.* v. *Wood*, 187 N. Y. 90; *Gilman* v. *Tucker*, 128 N. Y. 190; *People* v. *Warden*, 157 N. Y. 116; *Lawton* v. *Steele*, 152 U. S. 133; *Richmond* v. *Southern Bell Telephone Co.*, 85 Fed. Rep. 19; *Chicago* v. *Netcher*, 183 Illinois, 104.

Sales statutes are not within the police power. *Miller* v. *Crawford*, 70 Ohio St. 207; *McKinster* v. *Sager*, 163 Indiana, 671; *Off & Co.* v. *Morehead*, 235 Illinois, 40; *Wright* v. *Hart*, 182 N. Y. 330; *Neas* v. *Borches*, 109 Tennessee, 398.

The decisions cited from the state courts do not differ from the law as laid down by this court. *Slaughter House Cases*, 16 Wall. 36; *Lochner* v. *New York*, 198 U. S. 45; *Davidson* v. *New Orleans*, 96 U. S. 97; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Hennington* v. *Georgia*, 163 U. S. 299, 303; *Mugler* v. *Kansas*, 123 U. S. 623; *State of Minnesota* v. *Barber*, 136 U. S. 313.

The act in question is substantially an insolvency law, and therefore of no effect when a national bankruptcy law is in force. *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Ogden* v *Saunders*, 12 Wheat. 213; *Tua* v. *Carriere*, 117 U. S. 201 1 Fed. Stat. Annot. 526, 527, notes; Brandenburg on Bankruptcy, 3d ed., § 16, and cases cited.

*Mr. Benn M. Corwin* for defendant in error:

The existence of an evil, so universal as to challenge the attention of almost every legislative body in the country, cannot be passed lightly by. *People* v. *Arensberg*, 103 N. Y. 388, 394.

Forty-one States and Territories, together with the Dis-

trict of Columbia, have passed statutes regulating the sale of stocks of goods in bulk.

These statutes may be divided into five groups or classes:

First. Arizona, California, Connecticut, Ohio, require notice of the proposed sale to be recorded, from five to ten days, before completing the sale. Such provisions sustained in *Calkins* v. *Howard*, 2 Cal. App. Rep. 233; *Walp* v. *Moore*, 76 Connecticut, 515; *Spencer* v. *Broughton*, 77 Connecticut, 38; *In re Paulis*, 144 Fed. Rep. 472 (Conn.); *Young* v. *Lemieux*, 79 Connecticut, 434; *Lemieux* v. *Young*, 211 U. S. 489.

Second. In the District of Columbia, Florida, Idaho, Kentucky, Maryland, New Hampshire, New Jersey, New York (new), Oregon, Pennsylvania, Rhode Island, Texas, West Virginia and Wisconsin, fourteen in all, the purchaser is required to demand and receive of the seller a list of names and addresses of his creditors and amount due each; the purchaser is also required to notify each creditor of the terms and conditions of the sale, either personally or by registered mail, from five to ten days before completion.

Three of these statutes have been construed and enforced without reference to their constitutionality in *Hart* v. *Roney*, 93 Maryland, 432; *Wilson* v. *Edwards*, 32 Pa. Sup. Ct. 295; *Fiengold & Co.* v. *Barsh & Co.*, 33 Pa. Sup. Ct. 39; *Fisher* v. *Herrmann*, 118 Wisconsin, 424.

Third. Colorado, Delaware, Georgia, Michigan, Indiana (new). Maine, Massachusetts, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oklahoma, South Carolina, Tennessee, Virginia, and Vermont, eighteen in all. In each of these States, the statute in force contains substantially the same provisions as those in the second group, and in addition to the requirements of the statutes in the second group, requires an inventory to be taken and notice to be given in person or by registered mail, as in the second group.

The constitutionality of six of this group of statutes, all containing substantially the same provisions as the Michigan

statute, has been upheld. *Spurr* v. *Travis*, 145 Michigan, 721; *Musselman Grocer Co.* v. *Kidd, Dater & Price*, 151 Michigan, 478; *Squire* v. *Tellier*, 185 Massachusetts, 18; *Thorpe* v. *Pennock*, 99 Minnesota, 22; *Jaques & Tinsley Co.* v. *Carstorphen Warehouse Co.*, 131 Georgia, 1; *Williams* v. *Fourth National Bank*, 15 Oklahoma, 477; *Neas* v. *Borches*, 109 Tennessee, 398.

In addition to the cases cited which have passed directly upon the validity of these statutes, the validity of such statutes has been assumed without question in *Wasserman* v. *McDonnell*, 190 Massachusetts, 326; *Kelley-Buckley Co.* v. *Cohen*, 195 Massachusetts, 585; *Hart* v. *Brierley*, 189 Massachusetts, 598; *Hannah & Bogg* v. *Brewing Co.*, 149 Michigan, 220; *Farrar* v. *Lonsby Lumber Co.*, 149 Michigan, 118; *Pierson & Hough Co.* v. *Noret*, 154 Michigan, 268; *Bixler* v. *Fry*, 122 N. W. Rep. (Mich.) 119; *Carstorphen* v. *Fried*, 124 Georgia, 544; *Parham & Co.* v. *Potts-Thompson Liquor Co.*, 127 Georgia, 303; *Sampson* v. *Brandon Grocery Co.*, 127 Georgia, 454; *Taylor* v. *Folds*, 58 S. E. Rep. (Ga.) 683; *Gilbert* v. *Gonyea*, 103 Minnesota, 459; *Kolander* v. *Dunn*, 95 Minnesota, 422.

Fourth. Montana, Nevada, Washington, and Utah, require the purchaser to demand a sworn statement containing a list of the seller's creditors, and provides that all sales in bulk shall be void unless the purchaser shall pay or see to it that the purchase money of said property is applied to the payment of all *bona fide* claims of the creditors of the vendor, share and share alike.

The Washington statute, has been upheld in *McDaniell* v. *Connelly Shoe Co.*, 30 Washington, 549, and see also the following cases under this statute: *In re Gaskill et al.*, 130 Fed. Rep. (Wash.) 235; *Fitz Henry* v. *Munter*, 33 Washington, 629; *Kohn* v. *Fishback*, 36 Washington, 69; *Plass* v. *Morgan*, 36 Washington, 160; *Holford* v. *Trewella*, 36 Washington, 654; *Seattle Brewing &c. Co.* v. *Donofrio*, 34 Washington, 18; *Albrecht* v. *Cudihee*, 37 Washington, 206; *Everett Produce Co.* v. *Smith Bros.*, 40 Washington, 566.

Fifth. The Louisiana statute makes it a misdemeanor to purchase goods on credit and sell or otherwise dispose of them out of the usual course of business, with intent to defraud, and also for a purchaser to purchase a stock of goods in bulk without first obtaining a sworn statement from the vendor that the same are paid for.

For a conviction for fraud thereunder see *State* v. *Artus*, 110 Louisiana, 441.

Counsel for plaintiff erred in stating that the statute of Virginia has been held invalid. Of all the cases decided under statutes regulating the sales of stocks in bulk, only five have held statutes invalid: *Off & Co.* v. *Morehead*, 235 Illinois, 40; *McKinster* v. *Sager*, 163 Indiana, 671; *Wright* v. *Hart*, 182 N. Y. 332; *Miller* v. *Crawford*, 70 Ohio St. 207; *Block* v. *Schwartz*, 27 Utah, 387.

MR. JUSTICE WHITE delivered the opinion of the court.

This case involves the inquiry whether Act No. 223 of the Public Acts of the State of Michigan of the year 1905, commonly known as the "Sales-in-Bulk Act," is repugnant to the Fourteenth Amendment. The act is copied in the margin.[1]

---

[1] SEC. 1. The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferor or assignor, shall be void as against the creditors of the seller, transferor, assignor, unless the seller, transferor, assignor and purchaser, transferee and assignee, shall, at least five days before the sale, make a full detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller, transferor and assignor of each article to be included in the sale; and unless the purchaser, transferee and assignee demands and receives from the seller, transferor and assignor a written list of names and addresses of the creditors of the seller, transferor and assignor, with the amount of the indebtedness due or owing to each, and certified by the seller, transferor and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee and assignee shall,

The controversy thus arose: Early in the year 1906 Frank B. Ford operated a store in the village of Berrien Springs, Michigan, consisting of various departments—hardware, grocery, meat market and furniture department and buggies and machinery department. Prior to May 23, 1906, Ford made sale of the stock included in the buggies and machinery department. On the day mentioned plaintiff in error, after taking an inventory of the stock in the grocery department, valuing it at cost less ten per cent, purchased the same for $2,100, deducting an indebtedness due from Ford of $415.45 and paying the balance in cash. In making purchase the requirements of the Sales-in-Bulk Act referred to were not complied with in any particular. After the sale Ford still owned the meat market, worth between eight hundred and a thousand dollars, and the stock of hardware. worth between five and six thousand dollars. He afterwards sold the stock of hardware for about forty-one hundred dollars, and on such

at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail, every creditor whose name and address are stated in said list, or of which he has knowledge of the proposed sale and of the price, terms and conditions thereof.

SEC. 2. Sellers, transferors and assignors, purchasers, transferees and assignees, under this act, shall include corporations, associations, copartnerships and individuals. But nothing contained in this act shall apply to sales by executors, administrators, receivers, trustees in bankruptcy, or by any public officer under judicial process.

SEC. 3. Any purchaser, transferee or assignee, who shall not conform to the provisions of this act, shall, upon application of any of the creditors of the seller, transferor or assignor, become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment: Provided, however, That any purchaser, transferee, or assignee, who shall conform to the provisions of this act shall not in any way be held accountable to any creditor of the seller, transferor or assignor, or to the seller, transferor or assignor for any of the goods, wares, merchandise or fixtures that have come into the possession of said purchaser, transferee or assignee by virtue of such sale, transfer or assignment.

sale the requirements of the Sales-in-Bulk Act were complied with. The meat market was also disposed of, and in February, 1907, bankruptcy proceedings were commenced against Ford, with what result the record does not disclose.

After the sale of the stock of the grocery department to Kidd, Dater & Price Company, plaintiff in error, the Musselman Grocer Company, defendant in error, sued Ford upon an account and joined as garnishee the Kidd, Dater & Price Company, upon the theory that the latter company incurred a liability to respond as garnishees for the property acquired from Ford, because of non-compliance with the requirements of the act in question. Upon the trial it was contended by counsel for Kidd, Dater & Price Company that, if valid, the statute did not authorize garnishment proceedings for its enforcement, and that the act was invalid because repugnant both to the constitution of the State and to the Constitution of the United States. The last contention, with which alone we are concerned, was thus expressed:

"The act violates section 1 of the Fourteenth Amendment to the Federal Constitution, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The trial court held the contentions as to the proper construction of the statute and its constitutionality to be without merit, and by direction a verdict was returned for the plaintiff, upon which judgment was duly entered. Upon appeal the Supreme Court of Michigan affirmed the judgment. 151 Michigan, 478. It held the Sales-in-Bulk Act to be constitutional, without discussion, upon the authority of a previous decision (*Spurr* v. *Travis*, 145 Michigan, 721), and further decided that the failure to comply with the act made the sale by Ford to Kidd, Dater & Price Company void as to creditors, and that the plaintiff in garnishment was entitled to avail of the gar-

nishment provisions of the compiled laws of the State. This writ of error was then prosecuted.

The errors assigned embody the proposition that the Sales-in-Bulk Act in question was not a valid exercise of the police powers of the State, and is hence repugnant to the Fourteenth Amendment, because wanting in due process of law and denying the equal protection of the laws. Substantially the same arguments are urged as were presented in *Lemieux* v. *Young*, 211 U. S. 489, decided after this writ of error was sued out. In the *Lemieux case* the validity of legislation of the general character of that embodied in the Michigan statute was passed on. The Connecticut law, the constitutionality of which was particularly involved, was held to be a valid exercise of the police power of the State, and not to be repugnant to the due process or equal protection clauses of the Fourteenth Amendment, although it avoided as against creditors sales by retail dealers in commodities of their entire stock at a single transaction, and not in the regular course of business, unless notice of intention to make such sale was recorded seven days before its consummation. The opinion in that case thus concluded:

"As the subject to which the statute relates was clearly within the police powers of the State, the statute cannot be held to be repugnant to the due process clause of the Fourteenth Amendment, because of the nature or character of the regulations which the statute embodies, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to mere arbitrary usurpation of power. *Booth* v. *Illinois*, 184 U. S. 425. This, we think, is clearly not the case. So, also, as the statute makes a classification based upon a reasonable distinction, and one which, as we have seen, has been generally applied in the exertion of the police power over the subject, there is no foundation for the proposition that the result of the enforcement of the statute will be to deny the equal protection of the laws."

These principles are decisive against the contentions made

in this case, as we do not find in the provisions of the Michigan statute when compared with the Connecticut statute such differences as would warrant us in holding that the regulations of the Michigan statute are so beyond all reasonable relation to the subject to which they are applied as to amount to mere arbitrary usurpation of power. The purpose of both statutes is the same, viz., to prevent the defrauding of creditors by the secret sale of substantially all of a merchant's stock of goods in bulk, and both require notice of such sale and make void as to creditors a sale without notice. The differences between the two statutes are pointed out by counsel in a summary which we excerpt in the margin.[1]

---

[1] 1. The Connecticut law relates only to retail merchants; the Michigan law relates to wholesale and retail merchants.

2. The Connecticut law requires notice to be filed in the town clerk's office; the Michigan law requires notice either personally or by registered mail to the creditors, and to this end requires that the seller, transferor, or assignor shall, under oath, certify to a full, accurate and complete list of his creditors and of his indebtedness, and that the purchaser shall notify, personally or by registered mail, every creditor so certified, of the proposed sale and the conditions thereof.

3. The Connecticut law requires notice to be filed seven days prior to the sale, and the Michigan law requires five days before completion of sale, the purchaser shall notify, personally or by registered mail, every creditor, etc.

4. The Connecticut law requires a description in general terms of the property to be sold; the Michigan law requires a full and detailed inventory showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller, transferor, and assignor of each article to be included in the sale.

5. The Michigan law provides that any purchaser not conforming to the provisions of the act shall, on application of any creditor of the seller, become a receiver and be held accountable to such creditors for all the goods, etc.; the Connecticut law simply states that failure to comply with the act shall make the sale void as against the creditors.

6. The Michigan law provides that upon compliance with the provisions of the act a purchaser shall not in any way be held accountable to any creditor of the seller or to the seller for any of the goods so purchased; the Connecticut law is without any such provision.

It is apparent, we think, from this summary that the statutes are alike fundamentally, and differ only in minor and incidental provisions. In some respects the Michigan law is more comprehensive than the Connecticut law, as the latter law was limited to retail merchants, while the Michigan law affects wholesalers as well as retailers. The requirements of the Michigan law, that a full and detailed inventory shall be made, does not seem to us to be oppressive and arbitrary, as in *bona fide* purchases of stocks of goods in bulk a careful purchaser is solicitous to demand such an inventory, and in the purchase in question an inventory was in fact made. Nor can we say, in view of the ruling in the *Lemieux case*, to the effect that a State may, without violating the Constitution of the United States, require that creditors be constructively notified of the proposed sale of a stock of goods in bulk, that a requirement for what is in effect actual notice to each creditor is so unreasonable as to be a mere arbitrary exertion of power beyond the authority of the legislature to exert. We do not deem it necessary to further pursue the subject, as we think it clearly results, from the ruling in *Lemieux* v. *Young*, that the Michigan statute in no way offends against the Constitution of the United States, and therefore that the court below was right in so deciding.

*Affirmed.*