(93 Misc. Rep. 353)

### APEX LEASING CO., Inc., v. LITKE et al.

(Supreme Court, Trial Term, New York County. January, 1916.)

1. COURTS ☞97(6)—RULES OF DECISION—CONSTITUTIONAL QUESTIONS—DECISION OF FEDERAL SUPREME COURT—BULK SALES LAW.

The constitutionality of Personal Property Law (Consol. Laws, c. 41) § 44, as amended by Laws 1914, c. 507, § 1, providing that the sale in bulk of a stock of merchandise shall be void as against the seller's creditors, unless certain statutory requirements are observed, cannot be questioned, in view of a decision of the federal Supreme Court holding constitutional a similar statute of another state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 333; Dec. Dig. ☞97(6).]

2. FRAUDULENT CONVEYANCES ☞214—BULK SALES—LANDLORD AND TENANT—"CREDITOR."

Where, at the time of the transfer of a stock of merchandise in bulk by a tenant to a corporation, one month's rent was past due and unpaid, and there was an existing continuing liability on the part of the tenant to pay rent under a lease which had nearly four years to run, the landlord, having thereafter obtained judgment, was a "creditor," within Personal Property Law (Consol. Laws, c. 41) § 44, as amended by Laws 1914, c. 507, § 1, providing that a sale or transfer of a stock of merchandise in bulk, without observing certain statutory requirements, shall be void as to creditors of the seller.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 639, 640; Dec. Dig. ☞214.]

For other definitions, see Words and Phrases, First and Second Series, Creditor.]

3. CORPORATIONS ☞428(9)—BULK SALES—NOTICE—KNOWLEDGE OF CORPORATE OFFICERS.

Where a debtor, in violation of Personal Property Law (Consol. Laws, c. 41) § 44, as amended by Laws 1914, c. 507, § 1, transferred a stock of goods in bulk to a corporation of which his sister-in-law and wife were president and treasurer, respectively, the knowledge of one or both of the lease under which the debt, a liability for rent, accrued, was imputable to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1757, 1758; Dec. Dig. ☞428(9).]

4. FRAUDULENT CONVEYANCES ☞271(3)—BULK SALES—FRAUDULENT INTENT—PRESUMPTION.

The sale of goods in bulk, without complying with Personal Property Law (Consol. Laws, c. 41) § 44, subd. 1, as amended by Laws 1914, c. 507,

§ 1, raises a presumption of fraudulent intent on the part of the transferee, which, if not overcome by proof, becomes conclusive.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 798; Dec. Dig. ☞271(3).]

5. APPEAL AND ERROR ☞882(6)—HARMLESS ERROR—VARIANCE—WAIVER—STIPULATION.

Defendant cannot complain of a variance between the allegations of the complaint and the proof, where all the evidence went in under a stipulation providing that "the following facts which the plaintiff offers to prove on the trial are conceded by defendant to be true and may be spread upon the minutes of the trial as testimony in evidence."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3596; Dec. Dig. ☞882(6).]

6. PLEADING ☞237(6)—AMENDMENT—PROOF.

Where there is a variance between the allegations of the complaint and the proof, and defendant stipulates that the facts which plaintiff offers to prove are conceded to be true, the court, under the power granted it by Code Civ. Proc. § 723, authorizing amendments, will deem the complaint amended in accordance with the facts proved.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 607, 609, 611–616, 618, 619; Dec. Dig. ☞237(6).]

7. FRAUDULENT CONVEYANCES ☞304, 305—BULK SALES—REMEDIES OF CREDITOR.

Under Personal Property Law (Consol. Laws, c. 41) § 44, subd. 3, as amended by Laws 1914, c. 507, § 1, providing that any purchaser of goods in bulk, without complying with such section, shall, on application of any creditor of the seller, become a receiver, and be held accountable to such creditor for the goods, the usual remedies of injunction and receivership are available to the creditor in an action brought by him against the purchaser.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 910–919; Dec. Dig. ☞304, 305.]

Action by the Apex Leasing Company, Incorporated, against Samuel Litke and another. Judgment for plaintiff.

Bond & Babson, of New York City (Walter H. Bond, of New York City, of counsel), for plaintiff.

L. Freeman (Henry H. Glass, of New York City, of counsel), for defendants.

GOFF, J. Plaintiff seeks to hold the defendant Litke Stores, Incorporated accountable for certain property purchased by it from the defendant Samuel Litke, in alleged violation of section 44 of the Personal Property Law (Laws 1914, c. 507) containing what is known as the Bulk Sales Law of this state. The facts were stipulated at the trial. Briefly, the material facts are as follows:

On September 10, 1913, Samuel Litke leased from the plaintiff a store on Sixth avenue for five years from October 1, 1913, at $5,000 per annum, payable in equal monthly installments in advance. Upon the execution of the lease Litke deposited the amount of one month's rent as part security for his performance of the conditions of the lease. The lease provided for the right of the plaintiff, in case the tenant default in payment of rent, to eject him, relet the premises, and recover from the tenant the difference between the rent reserved in the lease

and the rent, if any, obtained on a release.  Litke entered the premises under the lease and conducted a business in ladies' garments.  On December 1, 1914, and for some time prior thereto, Litke operated another store on Grand street.  About December 1, 1914, the defendant Litke Stores, Incorporated, was organized, of which Sadie Weiscrbs, Litke's sister-in-law, is president, and Regina Litke, his wife, treasurer.  On December 3, 1914, Litke sold the business conducted by him on Grand street, including all the stock in trade and fixtures, to Litke Stores, Incorporated, for $2,000.  At the time of the sale Litke Stores, Incorporated, gave no notice to the plaintiff.  On December 1, 1914, Litke did not pay the Sixth avenue rent, then due, and on December 22, 1914, was duly dispossessed.  On February 18, 1915, the December rent was paid by applying the sum deposited as part security aforementioned under the lease.  After Litke's dispossession, the plaintiff re-entered and endeavored to relet the premises for January, 1915, but without success, and on May 11, 1915, recovered judgment against Litke for $431.91, one month's rent, with costs.  A transcript of the judgment was filed, and it was docketed in the office of the clerk of the county of New York, execution duly issued, and returned wholly unsatisfied.

The present action is brought upon this judgment, and the plaintiff asks that the aforesaid sale be declared void, that Litke Stores, Incorporated be appointed receiver of all the goods, wares, merchandise, and fixtures that came into its possession by virtue of the sale; that it be held accountable for such property and all proceeds arising from the sale thereof, be enjoined from disposing of the same, be directed to sell sufficient thereof to pay the plaintiff's judgment, and hold the balance subject to the court's order, and in the usual form for such other, further, or different relief as to the court may seem just and proper.  Defendants contend (1) that section 44 of the Personal Property Law relating to "transfer of goods in bulk" is unconstitutional; (2) that the plaintiff is not a creditor within the meaning of that law; (3) that there is no proof that Litke Stores, Incorporated, had knowledge that plaintiff was a creditor of Samuel Litke; and (4) that there is a variance between the allegations of the complaint and the proof on the trial.

Section 44 of the Personal Property Law (Laws 1914, c. 507, in effect April 23, 1914) reads as follows:

"1. The sale, transfer or assignment in bulk of any part or the whole of a stock of merchandise, or merchandise and of fixtures pertaining to the conducting of the business of the seller, transferrer or assignor, otherwise than in the ordinary course of trade and in the regular prosecution of said business, shall be void as against the creditors of the seller, transferrer or assignor unless the seller, transferrer or assignor and the purchaser, transferee or assignee shall at least five days before the sale make a full and detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller, transferrer or assignor of each article to be included in the sale; and unless the purchaser, transferee or assignee demand and receive from the seller, transferrer or assignor a written list of names and addresses of the creditors of the seller, transferrer or assignor with the amount of the indebtedness due or owing to each and certified by the seller, transferrer or assignor under oath to be a

full, accurate and complete list of his creditors and of his indebtedness; and unless the purchaser, transferee or assignee shall at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, *or of which he has knowledge*, of the proposed sale and of the price, terms and conditions thereof.

"2. Sellers, transferrers and assignors, purchasers, transferees and assignees under this section shall include corporations, associations, copartnerships and individuals. But nothing contained in this section shall apply to general assignments for the benefit of creditors or to sales by executors, * * * receivers, trustees in bankruptcy, assignees under a voluntary assignment for the benefit of creditors or any public officer under judicial process.

"3. Any purchaser, transferee or assignee who shall not conform to the provisions of this section shall upon application of any of the creditors of the seller, transferrer or assignor become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment: Provided, however, that any purchaser, transferee, or assignee, who shall conform to the provisions of this act shall not be held in any way accountable under this section to any creditor of the seller, transferrer or assignor * * * for any of the goods, wares, merchandise or fixtures that have come into the possession of such purchaser, transferee or assignee by virtue of such sale, transfer or assignment."

[1] 1. Statutes of the character of the one just quoted are of recent origin, the earliest being that of Louisiana in 1896. Similar statutes have been passed in many states declaring fraudulent and void as to the seller's creditors the sale of his stock of merchandise in an irregular and unusual way unless certain prescribed requirements are observed. The object of such statutes is well stated by Vann, J., in Wright v. Hart, 182 N. Y. 330, 346, 75 N. E. 404, 410 [2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263]:

"The object of the act was to suppress a widespread evil, well known to current history, and condemned by repeated adjudications in this court and in all the leading courts of the state from time out of mind. That evil is the tendency and practice of merchants who are heavily in debt to make secret sales of their merchandise in bulk for the purpose of defrauding creditors."

In Kidd, Dater & Price Co. v. Musselman Grocery Co., 217 U. S. 461, at page 473, 30 Sup. Ct. 606, at page 607 [54 L. Ed. 839], Mr. Justice White said:

"The purpose of both statutes [speaking of the Connecticut and Michigan Sales in Bulk Acts] is the same, viz., to prevent the defrauding of creditors by the secret sale of substantially all of a merchant's stock of goods in bulk."

In this state a former statute (Laws 1902, c. 528) declaring a sale made contrary to its terms to be "fraudulent and void as against the creditors of the seller" was held unconstitutional in Wright v. Hart, supra. As amended in 1904 (Laws 1904, c. 569) the statute did not declare such sale "fraudulent and void," but that it "will be presumed to be fraudulent and void." The constitutionality of the law in this form was upheld by the Appellate Division of the Second Department in Sprintz v. Saxton, 126 App. Div. 421, 110 N. Y. Supp. 585. Similar statutes in other states have been upheld, and the defendants are not in a position to assail the constitutionality of the present law in this state in view of the decision of the United States

Supreme Court in Kidd, Dater & Price Co. v. Musselman Grocery Co., supra, where a statute of Michigan, with which our own statute corresponds almost verbatim, was held to be constitutional. See, also, Lemieux v. Young, 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295, and People v. Luhrs, 195 N. Y. 377, 383, 89 N. E. 171, 25 L. R. A. (N. S.) 473.

[2] 2. Is the plaintiff a creditor within the meaning of the law? Certainly on December 3, 1914, when Litke transferred the Grand street business, stock and fixtures, to Litke Stores, Incorporated, Litke had not paid the December rent, and that rent was due and owing on December 1, 1914. But more than this, there was an existing continuing liability on the part of Litke to pay rent. The lease had nearly four more years to run. In O'Brien v. Whigam, 9 App. Div. 113, 41 N. Y. Supp. 40, an action was brought to set aside a conveyance as fraudulent, and at the time of the conveyance the plaintiffs and the grantor were respectively landlord and tenant under a lease which provided for a renewal. A new lease was made, and the tenant continued in occupation but defaulted in subsequent rent, for which the plaintiff recovered judgment. Hatch, J., said (9 App. Div. 114, 41 N. Y. Supp. 41):

"At the time when the conveyance was made there was a subsisting lease, the privilege of renewal existed, and whether it should be renewed or not was at the option of the lessee. She having exercised that option by a renewal, there was at all times an existing continuing liability upon her part to pay the rent secured thereby. This condition constituted the plaintiffs creditors within the meaning of the statute at the time the transfer was made."

See, also, Young v. Heermans, 66 N. Y. 374; Wahlheimer v. Truslow, 106 App. Div. 73, 94 N. Y. Supp. 137; 20 Cyc. 421.

As showing the proper attitude to be adopted by the courts in construing statutes aimed to prevent fraud, Seabury, J., in Seeman v. Levine, 67 Misc. Rep. 74, at pages 76, 77, 121 N. Y. Supp. 645, at page 647, where it was attempted to restrict the meaning of the word "creditors" in this statute, said:

"The contention that the statute is inapplicable to the present action proceeds from an attempt to give the statute so technical a construction as to defeat its purpose. * * * If it is constitutional, the courts should strive to apply it so as to give effect to its purpose."

The same spirit of broad construction to make the act "really effective" is evidenced in the recent decision of the Appellate Division. Touris v. Karantzalis, 156 N. Y. Supp. 526.

[3, 4] 3. It is admitted that Samuel Litke sold his Grand street business, stock, and fixtures to Litke Stores, Incorporated. The original bill of sale "was never filed in the register's office of New York county." The president and treasurer of Litke Stores, Incorporated, are respectively Litke's sister-in-law and wife. They testify that all other creditors, *except the plaintiff*, were paid. Litke's wife admits that she was present when the lease between plaintiff and Litke was signed, and knew that the lease was for a period of four or five years, and that it had not expired at the time of the sale. It is a fair inference from the testimony of the sister-in-law that she also knew of the

existence at least of the lease.. Certainly the knowledge of one or both is imputable to the defendant corporation. The detailed provisions of subdivision 1 of section 44 of the Personal Property Law, supra, were not complied with. As stated by Page, J., in Rugen v. Mulvihill, 85 Misc. Rep. 354, 356, 147 N. Y. Supp. 404, 405:

"The sale of goods in bulk without compliance with the terms of the statute raises a presumption of fraudulent intent on the part of the transferee which, if not overcome by proof, becomes conclusive."

[5, 6] 4. Defendants' objection that there is a variance between the allegations of the complaint and the proof on the trial is trivial. All the evidence in the case went in under and by virtue of a stipulation providing that "the following facts which the plaintiff offers to prove on the trial are conceded by the defendants to be true and may be spread upon the minutes of the trial as testimony in evidence" in behalf of the plaintiff. Therefore there was no objection to any of the proof submitted. The complaint alleged transfer of the Sixth avenue business, stock, and fixtures. By the stipulation the defendants admitted transfer of the Grand street business, stock, and fixtures. The defendants have not been misled, nor any of their substantial rights affected. The stipulation was as much defendants' proof as plaintiff's proof. The defendants cannot be heard to say that the issues were other than they voluntarily litigated and thus delay justice. In any event, under the power granted it by section 723 of the Code of Civil Procedure, the court will deem the complaint amended in conformance with the facts proved. The plaintiff has proved his case and is entitled to judgment, with costs.

[7] What the form of the judgment in such an action as this should be in order to enforce the plaintiff's rights has not received much attention from the courts. Subdivision 3 of section 44 of the Personal Property Law, supra, provides that:

"Any purchaser, transferee or assignee who shall not conform to the provisions of this section shall upon application of any of the creditors of the seller, transferrer or assignor *become a receiver and be held accountable* to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment. * * *"

In Touris v. Karantzalis, supra, Scott, J. (156 N. Y. Supp. 528), said:

"The remedy given is a new one, and analogies drawn from the practice in creditors' suits and actions in aid of an execution are of little value. The act itself, within its own lines, condemns sales made in violation of it, and declares the remedy. This is the construction given to a similar act by the Supreme Court of Michigan in Coffey v. McGahey, 181 Mich. 225, 148 N. W. 356. In that case the court said: 'Further, the remedy in the instant case is given by the statute, by which any and all creditors may, as soon as knowledge comes to them that the requirements of the statute have not been followed, proceed immediately, not to set aside the sale, but to impound the property or its proceeds. Upon application of any of the creditors, "any purchaser shall become a receiver and be held accountable," etc., is the reading of the statute, and for this reason the judgment creditor rule does not apply. * * * The bill of complaint is not filed upon the theory of a judgment creditor's bill, or a bill in aid of execution, but upon the theory that the statute made the

transfer to defendant Baker absolutely void as to creditors; that creditors of McGahey are entitled to reach this property and apply it upon their claims.' "

In Matter of P. Pastene & Co., Inc., 156 N. Y. Supp. 524, Davis, J., said:

"This statute does not contemplate the appointment of the purchaser as receiver in the ordinary sense. Such an interpretation of the statute would not be natural or reasonable, in view of the fact that the creditors' application is an act hostile to the title of the purchaser. The clear intention of the statute is to make the purchaser a trustee of the goods purchased, with the obligation to account to the creditors of the seller. Under this statute the creditor must establish his right by an action. He may bring an action in equity in behalf of all creditors who may desire to intervene against the purchaser and seller. The word 'creditors,' as used in this section, includes all the creditors of the seller who are to receive the notice referred to in the statute, regardless of whether they are judgment creditors or not. Any of these creditors, to whom notice is required to be given, may bring the action on behalf of all of the creditors. It is not an action to set aside a sale because of noncompliance with the statute. The failure to comply with the statute renders the sale void, and the purchaser, instead of becoming the owner of the goods sold, on the complaint of any creditor shall be deemed to be, as a matter of law, a trustee for the creditors of the seller. As soon as the action is begun the purchaser is deemed to be a receiver, with the duty to account as trustee to the creditors pro rata for all the property sold to him in violation of the provisions of the statute. *In such an action the usual remedies of injunction and receivership are available to the creditor.*"

With the last decision above quoted I am in accord, and therefore in rendering judgment for the plaintiff declaring the sale by Samuel Litke to Litke Stores, Incorporated, void, direct that a receiver be appointed of all the goods, wares, merchandise, and fixtures that came into the possession of Litke Stores, Incorporated, by virtue of the sale, which property I decide said corporation now holds in trust for the creditors of Samuel Litke; that Litke Stores, Incorporated, be adjudged to turn over and deliver to said receiver and account to him for all of the property so received, and for all proceeds arising from the sale of all or any part thereof; and that in the meantime Litke Stores, Incorporated, is enjoined and restrained from disposing of said property in any way or paying out any of the proceeds thereof. Judgment accordingly.