**McBRIDE v. BERTSCH et al.**

No. 2263.

District Court, W. D. Michigan, S. D.
Aug. 9, 1930.

B. M. Corwin, of Grand Rapids, Mich. (Corwin, Norcross & Cook, of Grand Rapids, Mich., on the brief), for appellants.

O. S. Cross, of Holland, Mich. (Charles H. McBride and Diekema, Cross & Ten Cate, all of Holland, Mich., on the brief), for appellee.

RAYMOND, District Judge.

Plaintiff seeks to set aside, as a fraud upon the creditors of bankrupt, a trust agreement made by Fred S. Bertsch with Grand Rapids Trust Company, trustee. Defendant Bertsch was adjudicated bankrupt on January 23, 1929. Debts allowed against his estate aggregate in excess of $23,000. The indebtedness far exceeds the value of any property he may have.

It appears from the evidence that on February 26, 1926, while defendant Bertsch was engaged in the operation of a fruit farm and the manufacture and sale of fruit juices he executed the trust agreement here in question, designated as Exhibit B, by which he conveyed to the trustee real and personal property valued at approximately $30,000, which was substantially his entire estate. He was at that time indebted in the sum of about $11,000. Subsequent to executing the trust agreement he continued to operate the farm, and to harvest the fruit and sell fruit juices. He also made extensive improvements to his cider mill and bottling works. He installed new equipment at a cost of about $8,000, and borrowed considerable sums of money at two of the banks in the city of Holland for use in carrying on his enterprise. Among the obligations set forth in the bankruptcy schedules are notes in the principal amount of $5,400, given to the Holland City State Bank during October and November of 1926. The schedules also disclose obligations in a sum exceeding $2,000, contracted during 1926 with concerns engaged in the sale of lumber, tile, gravel, roofing, coal, and other supplies. One of the liabilities scheduled is a judgment of $3,462.03 for the price of bottles purchased in 1926 and used in the business. The testimony is clear that he continued the business of operating the farm and manufacturing fruit juices in the same manner after the execution and delivery of the trust agreement as he did before it was entered into. It appears also that he continued living on the farm with his family as he had previously done, and that his bank account was carried in the same way. Substantially all creditors who were in existence on February 26, 1926, had been paid in full prior to bankruptcy. All conveyances made pursuant to the trust agreement have been duly recorded.

The question presented is whether the trustee in bankruptcy may set aside on behalf of subsequent creditors the trust agreement above referred to. Much confusion has existed among the authorities as to the cir-

cumstances under which such a transfer may be set aside. The rule seems to have been well established that in order to set aside as fraudulent a transfer of property as to subsequent creditors it must be shown that there was an intent to contract debts in the future and to avoid payment thereof because of the transfer. The rule has been variously applied by different courts. As illustrative of the different views taken, see Jones v. Clifton, 101 U. S. 225, 25 L. Ed. 908; Schreyer v. Scott, 134 U. S. 405, 10 S. Ct. 579, 33 L. Ed. 955; Crane v. Illinois Merchants Trust Co., 238 Ill. App. 257; Cram v. Cram, 262 Mass. 509, 160 N. E. 337; Eastern Sash & Door Company v. Meister, 99 N. J. Eq. 819, 134 A. 619, and the authorities therein referred to. See, also, 12 L. R. A. (N. S.) 369, case note; 27 C. J. 521; 25 R. C. L. 355.

However, consideration of the Uniform Fraudulent Conveyance Act (Act No. 310 of 1919, section 13392 et seq., Comp. Laws Mich. 1929) leads to the conclusion that the Legislature thereby intended to make a new statement of and to revise the law in respect to fraudulent conveyances. Section 5 thereof (section 13396, Comp. Laws Mich. 1929) is as follows:

"Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

It seems probable that the enactment of this section by a considerable number of state Legislatures was the direct outcome of the difficulties which arose in many cases in applying the various rules of law suggested by the authorities, and of recent legislative recognition of principles announced many years ago. In the case of Mackason's Appeal, 42 Pa. 330, 337, 82 Am. Dec. 517 (1862) the court used the following language:

"This statement brings us to the simple inquiry, can the owner of property so dispose of it, for his own use, benefit, and support, as to put it beyond the reach of liability for his future debts, he being and continuing sui juris, and there appearing to be no reason therefor excepting to withdraw it from such liability, and thus retain the temporal ownership without its incidents? This would be a startling proposition to affirm. It would revolutionize the credit system entirely, destroy all faith in the apparent ownership of property, and repeal all our statutes and decisions against frauds. Every man about to engage in business where there was a chance of loss, would place himself under the pupilage of trustees, and everybody's estates would be passing under settlement deeds and trustees' accounts through the courts, before, in the natural course of things, the jurisdiction of the Orphans' Court would attach.

"Such consequences from judicial action need not be deprecated in advance, for they never can occur."

Actual experience appears to have demonstrated that in many cases the evil consequences feared have occurred, and Legislatures have concluded that transactions attended with the evils of actual fraud should be set aside without regard to actual intent.

It seems clear in the present case that not only was Mr. Bertsch already engaged in business, but it was his deliberate intention, necessarily inferred from his acts, to continue in the business and to incur large indebtedness in and about its expansion and operation. During 1926 he incurred obligations of approximately $11,000, which are still unpaid after having conveyed in trust substantially all of his property for his own use, benefit, and support and that of his family. He was left with practically no capital. From some evidence offered it might fairly be concluded that it was his intention to protect himself and his family at the expense of his creditors in event the business should meet with disaster. In view of the statute above referred to, however, such a finding is unnecessary because the element of intent is no longer an important element in this class of cases.

A decree may be presented for signature in conformity with the prayer of the bill, with appropriate provisions for accounting to date of decree.

### On Rehearing.

Upon the rehearing granted by order of July 26, 1930, briefs were submitted upon the alleged unconstitutionality of section 5 of Act No. 310 of 1919 (Comp. Laws Mich. 1929, § 13396). It is urged by defendant that a statute which makes a transaction, valid when made, illegal at a subsequent date, impairs the obligation of contracts and takes property without due process of law, and is therefore void under the Fourteenth Amendment. The Uniform Fraudulent Conveyance Act has been enacted in many states. No case is cited or found discussing the precise

question here involved. The right to dispose of property on such terms as one sees fit and to make contracts in regard thereto is both a liberty and property right. This freedom of contract however is not an absolute, but a qualified right, and is subject to reasonable restraint by Legislatures in the interest of public welfare. The general principles are discussed and applications thereof are found in C. B. & Q. R. R. Co. v. McGuire, 219 U. S. 549, 568, 31 S. Ct. 259, 55 L. Ed. 328; Rosenthal v. New York, 226 U. S. 260, 33 S. Ct. 27, 57 L. Ed. 212; Schmidinger v. Chicago, 226 U. S. 578, 33 S. Ct. 182, 57 L. Ed. 364; Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224; Lemieux v. Young, 211 U. S. 489, 29 S. Ct. 174, 53 L. Ed. 295; Kidd v. Musselman, 217 U. S. 461, 30 S. Ct. 606, 54 L. Ed. 839; International Harvester Co. v. Missouri, 234 U. S. 199, 34 S. Ct. 859, 58 L. Ed. 1276, 52 L. R. A. (N. S.) 525.

The evils incident to the conveyance of all or substantially all of the property of one intending to continue or to engage in business and to contract debts in connection therewith presented difficulties variously dealt with by courts and Legislatures. The section of the uniform act here under discussion as applied to the facts of this case seems well within the principles upheld in the cases cited.

A decree may be submitted for signature in accord with that previously entered.